**FILED**
UNITED STATES DISTRICT COURT
LAS CRUCES, NEW MEXICO

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

MAY − 4 2023

for the

District of New Mexico 

MITCHELL R. ELFERS
CLERK OF COURT

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
CELL PHONES, DIGITAL CAMERAS, TABLETS, LAPTOPS, AND REMOVABLE STORAGE MEDIA BELONGING TO KEITH MEDINA SEIZED BY FBI

)
)
)
)
)
)

Case No. 23-937 MR

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
  See Attachment A

located in the _____ District of _____ New Mexico _____ , there is now concealed *(identify the person or describe the property to be seized)*:
  See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 2422(b) | Enticement of a Minor |

The application is based on these facts:
See Attachment

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent David Gabriel
*Printed name and title*

Sworn to before me and signed in my presence.
 - by telephone.  JHR

Date: May 4, 2023

City and state: Las Cruces, NM

*Judge's signature*

U.S. Magistrate Jerry H. Ritter
*Printed name and title*

## ATTACHMENT A

## DESCRIPTION OF LOCATION TO BE SEARCHED

The affidavit, see Attachment C, is submitted in support of a warrant to search and seize information, more fully described in Attachment B, contained in the below devices ("Devices"), which are located in the Las Cruces Resident Agency of the Federal Bureau of Investigation, 2509 North Telshor Boulevard, Las Cruces, New Mexico 88011. This warrant authorizes the forensic examination of the entirety of each device for the purpose of identifying the electronically stored information described in Attachment B. The devices:

    a.   Black Samsung Galaxy S8+ Smartphone with IMEI 354003080781269

    b.   Black Samsung Galaxy Note 8 Smartphone with IMEI 358071080505810

    c.   Black Samsung Galaxy S9 Smartphone with IMEI 353301091037221

    d.   Black LG LS775 Smartphone with S/N 609CYPY0677896

    e.   Black LG ZNFL555DL Smartphone with IMEI 359801105511404

    f.   Black Alcatel One Touch Smartphone with IMEI 354161075607954

    g.   Black Orbic Smartphone

    h.   Blue BLU VIEW3 Smartphone (IMEI/Serial Not Accessible Without Disassembly)

    i.   Black LG VS700 Smartphone with S/N 110KPZK0265789

    j.   Black Alcatel One Touch Smartphone (IMEI/Serial Not Accessible Without Disassembly)

    k.   Black LG smartphone (IMEI/Serial Not Accessible Without Disassembly)

    l.   Black Samsung Tablet with IMEI 355420102188498

    m.   Grey Samsung Tablet with S/N R9TR40GH4EJ

    n.   Silver HP Envy Laptop with S/N 8CG91ODF9V

    o.   Grey HO Compaq Laptop with S/N CND7080H16

p.  Sandisk USB stick model SDCZ36-016G

q.  Transcend SD Card

r.  Silver Nikon Digital Camera

s.  Black Pilot Digital Camera

t.  Silver and Black Zosi HD Recorder

u.  Black BLU Smartphone with IMEI 353011723269015

v.  Gold Samsung Galaxy Note 5 with IMEI 990007018519055

w.  Black Samsung Smartphone with IMEI 359265102262686

x.  Dark Blue Samsung Smartphone with IMEI 354229117029311

y.  Dark Grey Samsung Smartphone with IMEI 353955211233943

z.  Black  Motorola Smartphone with IMEI 352176103400166

aa. Black Samsung Smartphone with IMEI 356823091763206

## ATTACHMENT B

## PROPERTY TO BE SEIZED

1.      The particular things to be seized include all records, in whatever format, stored on the Devices described in Attachment A that relate to production of child pornography, in violation of §§ 2251(a) (production of child pornography) and 2422(b) (enticement of a minor) including:

a. Any and all software apps, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs, including mapping apps, photography apps, travel apps, and any applications that have messaging capabilities that are on the Devices.

b. Any and all notes, documents, records, or correspondence, in any format and medium (including-mail messages, text messages, instant messages, chat logs, and other digital data files) pertaining to Defendant's travels (including location information) and communications with the victim and any other minors.

c. In any format and medium, all photographs and images on the Devices.

d. Any and all electronic address books, names, and the lists of names and addresses of individuals on the Devices who the Defendant may have communicated with.

e. Any and all documents, records, or correspondence, pertaining to the ownership and use of the Devices described above, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, text messages, photographs, and correspondence.

f. Passwords, encryption keys, and other access devices that may be necessary to access information stored on the Devices or elsewhere. Any and all passwords and

other data security devices designed to restrict access to, hide, or destroy software, documentation, or data. Data security devices may consist of software or other programming code. Any and all data which would reveal the presence of malware, viruses or malicious codes located on the computer storage media.

g.  Records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

h.  Records evidencing the use of the Internet Protocol addresses including records of Internet Protocol addresses used by the device and Internet Protocol addresses used by computers that the device connected to.

i.  Physical evidence related to correspondence with other persons or groups interested in sexual behavior with children, and any and all diaries or other records related to child sexual partners, including phone or address books in which the suspects have recorded names, addresses, and phone numbers of child sexual partners.

j.  Adult pornography which, although not inherently criminal, was used in the enticement of minors and may corroborate interviews of the victims

2.  This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, law enforcement shall deliver a complete copy of the

28

seized or copied electronic data to the custody and control of attorneys for the government and

their support staff for their independent review.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF
CELL PHONES, DIGITAL CAMERAS,
TABLETS, LAPTOPS, AND
REMOVABLE STORAGE MEDIA
CURRENTLY LOCATED AT  THE
FEDERAL BUREAU OF
INVESTIGATION LOCATED AT 2509
NORTH TELSHOR BOULEVARD, LAS
CRUCES, NEW MEXICO 88011.

Case No. _____

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, David S. Gabriel, a Special Agent with the Federal Bureau of Investigation, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I have been employed as a Special Agent (SA) of the FBI since May of 2018.  I am classified, trained, and employed as a federal law enforcement officer with statutory arrest authority charged with conducting criminal investigations of alleged violations of federal criminal statutes, including Title 18 of the United States Code. I am currently assigned to the Albuquerque Field Office, Las Cruces Resident Agency, New Mexico.  Prior to my current position, I was employed for six years as an analyst and briefer in a federal intelligence service.  I am currently assigned to investigate violations of federal law, including Indian County crimes, assaults on federal officers, and violent crimes against children.

1

2.      During my tenure with the FBI, I have received formal and informal training in conducting a variety of criminal investigations, including the investigation of individuals involved in the exploitation of minors in violation of Title 18, United States Code, Sections 2251 and 2422(b).  During the investigation of these cases, I have executed, or participated in the execution of, numerous search warrants and seized evidence of these violations.  I have used investigative techniques including, but not limited to, consensual monitoring, witness and subject interviews, and undercover operations.

3.      The information set forth in this affidavit was derived from my own investigation and/or communicated to me by other sworn law enforcement officers.  Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation.  I have set forth only those facts that I believe are necessary to establish probable cause to search the devices in the possession of or located in the residence/vehicle of Keith Joseph Medina for production of child pornography, in violation of 18 U.S.C. § 2251(a) and enticement of a minor, in violation of 18 U.S.C. § 2422(b).

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

4.      The property to be searched includes electronic devices seized from the home and vehicle of Keith Medina in September 2022 by the Lordsburg Police Department pursuant to a state search warrant, which were subsequently turned over to the FBI. Law enforcement has maintained a chain-of-custody over these devices since their seizure.  The property includes:

    a.   Black Samsung Galaxy S8+ Smartphone with IMEI 354003080781269

    b.   Black Samsung Galaxy Note 8 Smartphone with IMEI 358071080505810

    c.   Black Samsung Galaxy S9 Smartphone with IMEI 353301091037221

    d.   Black LG LS775 Smartphone with Serial Number 609CYPY0677896

e.  Black LG ZNFL555DL Smartphone with IMEI 359801105511404

f.  Black Alcatel One Touch Smartphone with IMEI 354161075607954

g.  Black Orbic Smartphone

h.  Blue BLU VIEW3 Smartphone (IMEI/Serial Not Accessible Without Disassembly)

i.  Black LG VS700 Smartphone with Serial Number 110KPZK0265789

j.  Black Alcatel One Touch Smartphone (IMEI/Serial Not Accessible Without Disassembly)

k.  Black LG smartphone (IMEI/Serial Not Accessible Without Disassembly)

l.  Black Samsung Tablet with IMEI 355420102188498

m.  Grey Samsung Tablet with Serial Number R9TR40GH4EJ

n.  Silver HP Envy Laptop with Serial Number 8CG91ODF9V

o.  Grey HO Compaq Laptop with Serial Number CND7080H16

p.  Sandisk USB stick model SDCZ36-016G

q.  Transcend SD Card

r.  Silver Nikon Digital Camera

s.  Black Pilot Digital Camera

t.  Silver and Black Zosi HD Recorder

u.  Black BLU Smartphone with IMEI 353011723269015

v.  Gold Samsung Galaxy Note 5 with IMEI 990007018519055

w.  Black Samsung Smartphone with IMEI 359265102262686

x.  Dark Blue Samsung Smartphone with IMEI 354229117029311

y.  Dark Grey Samsung Smartphone with IMEI 353955211233943

z.  Black Motorola Smartphone with IMEI 352176103400166

aa. Black Samsung Smartphone with IMEI 356823091763206

5.      The requested warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

**LEGAL DEFINITIONS**

6.      The following terms are relevant to this affidavit in support of this application for a search warrant:

a) *Child Pornography*:  The term "child pornography" is defined at 18 U.S.C. § 2256(8).  It consists of the visual depiction of sexually explicit conduct where (a) the production of the visual depiction involved the use of a minor engaged in sexually explicit conduct, (b) the visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaged in sexually explicit conduct, or (c) the visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaged in sexually explicit conduct, as well as any visual depiction, the production of which involves the use of a minor engaged in sexually explicit conduct.  *See* 18 U.S.C § 2252 and 2256(2), (8).

b) *Computer:*  The term "computer" refers to "an electronic, magnetic, optical, electrochemical, or other high-speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, mobile phones and devices, and tablets.  *See* 18 U.S.C § 1030(e)(1).

4

c) *Electronic mail ("e-mail" or "email")*: "E-mail" refers to a method of exchanging digital messages from an author to one or more recipients. Users may attach digital media to their e-mails. Modern e-mail operates across the internet or other computer networks. E-mail systems are based on a store-and-forward model. E-mail servers accept, forward, deliver, and store messages. E-mail accounts may be accessed by computers, to include smartphones and tablets.

d) *Minor*: The term "minor" means any person under the age of eighteen years. *See* 18 U.S.C. § 2256(1).

e) *Sexual Activity*: The phrase "sexual activity for which any person can be charged with a criminal offense" includes production of child pornography. See 18 U.S.C. § 2427. There is no federal statutory definition of "sexual activity," the term is given its natural meaning.

f) *Sexually Explicit Conduct*: The term "sexually explicit conduct" means actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic area of any persons. *See* 18 U.S.C. § 2256(2).

g) *Visual Depictions*: "Visual depictions" include undeveloped film and videotape, and data stored on computer disk or by electronic means, which is capable of conversion into a visual image. *See* 18 U.S.C. § 2256(5).

## RELEVANT CHILD EXPLOITATION STATUTES

7.      This investigation concerns alleged violations of certain activities relating to the sexual exploitation of minors, specifically: production of child pornography, in violation of 18 U.S.C. § 2251(a), and enticement of a minor, in violation of 18 U.S.C. § 2422(b).

     a. Title 18 U.S.C. § 2251(a) makes it unlawful for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or who has a minor assist any other person to engage in, or who transports any minor in or affecting interstate or foreign commerce, with the intent that such minor engage in any sexually explicit conduct for the purpose of producing any visual depiction of such conduct or for the purpose of transmitting a live visual depiction of such conduct.

     b. Title 18 U.S.C. § 2422(b), provides, in relevant part, whoever, using the mail or any facility or means of interstate or foreign commerce, knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in any sexual activity for which any person can be charged with a criminal offense shall be punished in accordance with the penalties listed under the statute.

     c. Pursuant to New Mexico Statute Annotated § 30-9-11, fourth degree criminal sexual penetration includes sexual penetration with a child who is 13, 14, or 15, when the defendant is at least 18 years old and at least four years older than the victim. Criminal sexual penetration includes the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital.

**BACKGROUND ON CHILD EXPLOITATION OFFENSES**
**AND OFFENDER CHARACTERISTICS**

8.    I have had both training and experience in the investigation of child exploitation offenses. Based on my training, experience, and knowledge, I know the following:

    a)  In general, computers, including cellular phones, serve four functions in connection with child exploitation offenses: communication, production of child pornography, distribution/receipt of child pornography, and storage of child pornography.

    b)  Persons engaged in child exploitation offenses often use online resources to meet and communicate with minors. Such individuals may receive sexual gratification, stimulation, and satisfaction from virtual contact with children. Such contact often incudes conversations that are sexual in nature, requesting sexually explicit conduct from the child, or sending the child sexually explicit images to lower the inhibitions of children. Such persons often use online resources to meet and communicate with multiple minors at any given time. Often, such persons communicating with minors make efforts to meet the minor in person, for the purpose of engaging in sexual activity, sexual contact, or sexual acts with that minor.

    c)  Persons engaged in child exploitation offenses often use online resources to meet and communicate with other like-minded individuals. The Internet affords such persons several different venues for communication, as well as obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion.

    d)  Persons engaged in child exploitation offenses oftentimes use the Internet to do so. The Internet offers several different venues for obtaining, viewing, and trading

sexually explicit images in a relatively secure and anonymous fashion. Individuals who use the Internet can communicate electronically by using e-mail and other chat or messaging services. E-mail messages can contain text, data, and images. This type of communication is private in that it is directed from one Internet user to another. Internet users can also communicate using chat rooms and instant messaging. Both chat rooms and instant messaging incorporate "real time" communication between Internet users. Instant messaging, like e-mail, is private, in that it is one Internet user communicating specifically, and exclusively, with another. Instant messaging may also occur with more than one person at a time. Internet Serve Providers and web sites provide software and venue for such contact. The Internet offers a number of facilities, which allow users to access, distribute, and exchange information including the World Wide Web (WWW), File Transfer Protocol (FTP), electronic email (E-mail), and postings on boards or newsgroups. The WWW allows users to display and access data in a multimedia format.

e) Once persons engaged in child exploitation offenses obtain child pornography material directly from a child, or from the Internet, they often maintain or store this material because the material is valuable to them. Offenders maintain or store child pornography material in a variety of ways. For instance, such persons may store child pornography material on computers, including smartphones, mobile phones and devices, storage devices (including USB drives), and tablets.

f) These individuals view children as sexual objects and receive gratification from sexually explicit images of minors.

g) These individuals collect sexually explicit images of minors that they use for their own sexual gratification and fantasy. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography, but which nonetheless fuel these individuals' deviant sexual fantasies involving children.

h) My training, experience, and discussions with other investigators have further taught me that these individuals often keep their images for periods exceeding several years. They keep these sexually explicit images of minors for such long periods of time because the images are treated as prized possessions. They store such images in different formats including photos, printouts, videotapes, and various digital media formats. In addition, they store such images in different places, including their home, their office, their car, and other areas under their control.

i) Many of these individuals use sexually explicit images of minors as a means of reliving fantasies or actual sexual encounters. They also use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images to other people with similar interests.

j) These individuals go to great lengths to conceal and protect from discovery their collection of sexually explicit images of minors. They may have passwords used to access programs or control encryption written down either in the vicinity of their computer or on their person (for instance, in their wallet or an address book).

k) Many of these individuals maintain images of minors with whom they have had sexual contact. If a picture of a minor is taken by such a person depicting the minor in the nude, there is a high probability that the minor was used to produce sexually explicit images to be traded with people with similar interests.

## DETAILS OF THE INVESTIGATION

9. The following information was provided to me by the Lordsburg Police Department (LPD), Lordsburg, New Mexico or other FBI personnel: On September 27, 2022, the FBI received information from LPD Officer Walker Eby that LPD was working on a state criminal investigation of Joseph Keith Medina (age 36) for Criminal Sexual Penetration of a 15-year-old victim (hereinafter V1), Aggravated Assault with a Deadly Weapon against V1, and Intimidation of a Witness (also V1). The state investigation was initiated based on several events. First, on September 12, 2022, Medina contacted LPD and stated that V1 was spreading rumors that he was "gay" and that he had a "relationship" with V1. Responding LPD Officer Salcedo notified Medina that spreading rumors was not a crime. Second, on September 14, 2022, Medina approached an adult family friend of V1 in the parking lot of the Saucedo's Super Market in Lordsburg, New Mexico. Medina asked the friend where V1 was and stated that "I am going to hurt that boy," or words to that effect. Then, on September 17, 2022, V1 and V1's aunt reported to LPD that Medina had approached V1 in the parking lot of a Family Dollar discount store earlier that day and threatened V1 with a handgun. V1 stated that Medina approached him in the parking lot and pulled a tan pistol from under his shirt and stated: "you like to run your mouth," and "I'll be waiting for you wherever you're at so I can get you", or words to that effect. LPD officers identified two other witnesses in the Family Dollar parking lot who both corroborated V1's statement and who observed Medina threaten V1 with a gun. V1's aunt reported that after this encounter, V1 disclosed

10

to her that Medina "had sex" with him.  V1 reported to LPD that Medina had sexual contact with him on two separate occasions two or three months prior.  V1 stated that this occurred once at Medina's house and another time at Cross Mountain, which is a hiking area close to Silver City, New Mexico.

10.  Based on my investigation so far, it appears Medina groomed V1 throughout early 2022.  Medina appeared to have access to V1 because he knew V1's family.  On September 23, 2022, a certified child forensic examiner interviewed V1 at the Silver Regional Sexual Assault Support Services.  During this interview, V1 disclosed that in February 2022, Medina brought V1 in his vehicle to Cross Mountain, a hiking area in Silver City, New Mexico.  While there, Medina put his mouth on V1's genitals, and V1 inserted his penis into Medina's anus.  V1 used the word "rearend" to describe Medina's anus.  V1 also disclosed that later, in the summer of 2022, V1 went over to Medina's residence.  On that occasion, Medina brought V1 into his bedroom and showed him homosexual pornography on a laptop computer.  V1 then inserted his penis into Medina's anus.  V1 stated that on this occasion, Medina did not put his mouth on V1's genitals.  V1 stated that at some point Medina sent him text messages asking to have a "threesome" with another teenage boy.  V1 stated that Medina never took any pictures or videos of him.

11.  On September 18, 2022, New Mexico State charged Medina pursuant to state crimes for Aggravated Assault with a Deadly Weapon and Intimidation of a Witness.  The State later charged Medina with two counts of Criminal Sexual Penetration in the Fourth Degree (Child 13-16).  Medina has been detained since September 28, 2022.

12.  On September 22, 2022, Officer Eby interviewed Medina.  During that time, Officer Eby advised Medina of his *Miranda* rights, which he waived, and provided a statement.  Medina stated that he had multiple messages on his cell phone to V1 and another teenage boy (NFI) about

11

"having a threesome," but alleged that V1 had taken his cell phone and sent the messages to himself. Medina further stated that these messages were still on his cell phone. Medina described the phone as a black in color Blu brand smartphone, possibly item U described above. Medina also described a black in color Samsung Galaxy smartphone, and a Nokia C100 smartphone. Medina stated that the black Nokia C100 smartphone was the phone he had most recently used, and that it did not contain any text messages between Medina and V1. Medina stated that he used three different cell phones, including a black in color Nokia brand smartphone, which was the cell phone that he used most recently. Medina stated that the messages were not on this cell phone.

13.    That same day, Officer Eby obtained state magistrate search warrants for the cell phones described by Medina. There was no federal involvement in this case at that time. When Officer Eby went to Medina's home to execute the search warrants, Medina's wife provided the phones described by Medina, including the Nokia, several Black Samsung phones, as well as several other cell phones. When asked if the text messages between her husband and V1 were still on the phones, Medina's stated to Officer Eby that "they got deleted." Officer Eby obtained an additional search warrant from a New Mexico state magistrate judge for the additional cell phones she identified as belonging to Keith Medina.

14.    On September 23, 2022, after observing the child forensic interview, Officer Eby obtained search warrants for additional devices belonging to Medina. Later that evening, Officer Eby seized several cell phones, tablets, computers, and other digital media from Medina's residence. These items taken on September 22 and 23 include devices listed in Attachment A that I am seeking authority to search in this warrant.

15.    On October 5, 2022, FBI SA Sean Macmanus performed a Cellebrite extraction of the Nokia C100 smartphone. SA Macmanus is a certified Cellebrite Operator and Physical Analyst.

SA Macmanus performed a logical extraction of the data on the Nokia C100 and made a full forensic copy of the device, which he provided to Officer Eby.

16. On October 20, 2022, Officer Eby conducted an initial review of the Cellebrite extraction of the Nokia C100 smartphone. Almost immediately, he located and reviewed a deleted video file that contained the voices of who he believed was 15-year-old V1 and Medina, an erect penis engaged in oral sex, and the face of the subject. The face of the victim was not visible in the video; however, based upon the voices of the two male individuals, the question asked by one individual and answered by the second individual, and Officer Eby's knowledge of the statements made by the juvenile victim, Officer Eby believed that V1 was the person in this deleted video file.

17. On October 21, 2022, FBI SA Lisa Kite Hill accepted custody of evidence, which included the Nokia C100 smartphone as well as the Cellebrite extraction from the Nokia C100 smartphone, along with the items I am seeking authority to search. She secured the Nokia C100 smartphone, the USB thumb drive containing the Cellebrite extraction, and the other items in the Las Cruces Resident Agency of the FBI. She did not search the Nokia C100 smartphone or the USB thumb drive containing the Cellebrite extraction.

18. On November 14, 2022, Child Forensic Interviewer Lynette Janner forensically interviewed Medina's nine-year-old son (henceforth Victim #3 or V3). I viewed this recording multiple times prior to submitting this application. In this interview, V3 disclosed that Medina "sexually abuse[d]" V3 on multiple occasions. V3 described this occurring in the mountains near Lordsburg, New Mexico and on other occasions at a public park in Lordsburg, in his father's Toyota Landcruiser. V3 stated that the sexual abuse made him depressed and mad. V3 stated that his father sexually abused him from when V3 was in third grade at eight years old, through summer break, and into his fourth-grade year when Medina was arrested for sexually abusing V1. V3

described the first incident, as Medina grabbing V3's head and forcing his "private part" (which V3 described as the part where he pees) into V3's mouth. V3 stated that he was scared, and the activity made him gag. V3 stated that when he tried to pull his head back, but Medina forced it back down. V3 stated that he remembers Medina moaning and something that looked greyish and that tasted like "pee" squirt into V3's mouth. Afterwards, Medina brought V3 home, and V3 went to his room crying. V3 stated that Medina threatened to kill him if he did not let Medina do this and told V3 if he told anyone about the sexual abuse he would die. V3 stated that during this time-period, he saw Medina with a pistol that looked like a black Glock preparing to shoot himself. V3 stated that he begged him not to. V3 stated that Medina did not kill himself and began molesting V3 again a week later. On another occasion, Medina also inserted V3's penis into his mouth. V3 further disclosed that Medina showed him pornography, which V3 described as videos of people "sticking it" into other peoples' "poop parts." V3 stated that they would watch videos together on Pornhub, which I know from my training and experience to be an internet website where pornography can be viewed on a computer, cell phone, or other device capable of accessing the internet.

19. On December 13, 2022, SA Hill obtained a federal search warrant for the Nokia C100 smartphone. The search warrant was issued by the Honorable Stephan M. Vidmar, United States Magistrate Judge for the District of New Mexico.

20. On March 16th and again on March 27th, 2023, I reviewed the Cellebrite extraction of the Nokia C100 smartphone. Contained within the deleted files, I located and viewed three video files that depicted Medina inserting what appeared to be a minor's penis into his mouth and a fourth video of Medina and the unknown minor. Based on the several factors including the nature of the acts, dialogue between the parties present, and the apparent location of the videos, I believe

these videos are part of the same encounter. Each video was approximately one-minute in length and depicted the minor sitting or lying on a bed and Medina placing his mouth on the child's genitals, or in the case of the fourth video, shows the child undressing and talking to Medina. Medina's face and the victim's face are visible in this video, and Medina's face is visible in the three depicting the sexual act. I also observed a large quantity of videos depicting what appeared to be homosexual pornography, including individuals engaged in anal sex.

21. I recognized Medina's face from his New Mexico State Driver's License Photo. I believed that the victim in this video was a different individual than V1, (hereinafter "V2"), based on differences in voice and appearance from V1's face, which your affiant observed while reviewing the child forensic interview of V1. Following this discovery, your affiant contacted Lordsburg PD Officer Jesus Salcedo for assistance with identifying the minor in the video. Using a sterilized screenshot from the video, Officer Salcedo identified V2 as the minor. Officer Salcedo stated that he knows V2 through a community organization in Lordsburg, New Mexico. From reviewing school records, this victim was a minor at the time the videos appear to have been deleted (and therefore, produced). V2's voice can be heard throughout the videos making several comments including: "should I close my eyes" and "has it been a minute yet," or words to that effect. All videos had a file name and file path to a deleted folder on the device. Based on EXIF data, the videos appear to have been deleted from the device on September 12, 2022, which was the same date that Medina had initially contacted LPD to report that V1 was spreading rumors that he was "gay." I have personally reviewed the videos and I believe they constitute child pornography under 18 U.S.C. § 2256(2)(A).

22. On April 10, 2023, FBI Child and Adolescent Forensic Interviewer Heather Kimbell conducted a video-recorded forensic interview of V2 in Las Cruces, NM. I personally observed

this interview and reviewed the recording of this interview again later. During this interview, Ms. Kimbell showed V2 sterilized (non-pornographic) stills of the videos forensically extracted from the Nokia C100. V2 positively identified himself and Keith Medina from these images. V2 stated that Medina had known him for approximately five years and "watched him grow up". V2 stated Medina and an adult female close to Medina (henceforth "Witness One" or "W1"), routinely had sex with V2 beginning in 2022 shortly before Medina was arrested. At that time, V2 was seventeen years old. V2 stated that sex included oral-to-genital contact between V2 and Medina and W1, and genital-to-genital contact between V2 and W1, usually in Medina's residence in Lordsburg, New Mexico. V2 stated that the sexual contact between Medina and him did not feel right, even though "Keith" was his friend. V2 described this sensation as so uncomfortable that his anxiety would kick in, he would "break out in hives", and he would "get an adrenaline rush". V2 stated that Medina, W1, and V2 would have sex when Medina's two minor children, V3 and five-year-old daughter, were home sleeping. V2 further stated that Medina told V2 there was a camera, which V2 observed, but V2 did not think it was recording him. V2 stated that the feed from this camera and several other cameras could be viewed on a laptop computer in the bedroom. V2 also mentioned that sometimes the camera data was stored or viewable on cell phones and items that I believe to be removable storage media, such as flash drives, based on the way V2 described them. According to V2, Keith had multiple different cell phones, including an Android device and possibly some type of iPhone. When asked about the child pornography featuring V2, V2 stated that the production of the video occurred during a sexual encounter when only V2 and Medina were present. According to V2, W1 had gone to work and asked Medina via text message to produce a video of himself performing oral sex on V2. V2 stated that Medina recorded the video on one of his phones for W1. This act took place in V3's bedroom without V3 present. V2

16

identified V3's bedroom from the images based on stuffed animals that are visible in the background of the still images.  V2 further stated that Medina, W1, and another adult provided him with marijuana, which he consumed at their house, and on one occasion a crystal drug that I believe to be methamphetamine based on his description.  V2 stated that the crystal drug made him ill and caused vomiting.  V2 stated that Medina and W1 would communicate with him via Facebook Messenger and text message. V2 also described an incident when V1 sent him a text message from one of Medina's cellphones. V2 stated that V1 expressed an interest in a threesome between V1, V2, and Medina.

23.  On April 4, 2023, the United States of America charged Medina by criminal complaint with Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and Enticement of a Minor in violation of 18 U.S.C. § 2422(b).

24.  Based on my investigation, your affiant believes that Medina enticed and coerced V1 and V3 to engage in conduct that is illegal in New Mexico, specifically a violation of New Mexico State Code § 30-9-11(G)(1).  Moreover, V1 stated that Medina showed him gay pornography on a computer prior to engaging in sexual acts with V1.  Based on my training and experience, I am unaware of any computers capable of showing videos files that are manufactured in New Mexico. Indeed, most computers are manufactured oversees.  As detailed above, several computers and tablets were seized from Medina's residence by LPD after V1's disclosure regarding Medina showing him pornography on a computer.  Additionally, in Medina's post-*Miranda* interview, he admitted that one of his cell phones contained text messages to V1 about having a threesome with another minor.  Though Medina stated that V1 took his phone and sent those messages to himself, based on my investigation, your affiant believes that Medina was lying about V1 sending the messages and Medina in fact sent them.  Based on my training and experience, I know that in order

17

to send text messages the user of a phone has to be connected to a network which utilizes the internet. I further know that the internet is an instrumentality of interstate commerce. Based on the statement of V3, Medina used one of these devices to show adult pornography to V3 on Pornhub, which is owned by Canadian firm Mind Geek and operates servers in the United States and abroad.

25.    Based on my training and experience, I know that individuals who take pornographic pictures of minors often have those pictures stored in a variety of places, because they are prized possessions.

26.  Your affiant would now like permission to review these devices and removable storage media search for additional evidence related to production of child pornography crimes, along with enticement of minors, based on the child forensic interviews of V1, V2, V3 and the deleted video files recovered from Medina's Nokia C100 phone.

## TECHNICAL TERMS

27.  Based on my knowledge, training, and experience, I know that the cellphones have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device. Based on my training and experience, the technical terms identified in this paragraph convey the following meanings:

    a)  *Wireless telephone:*  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitters/receivers, enabling communication with other wireless telephones or

traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include:  storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b) *Internet*:  The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28.  Based on my knowledge training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some time on the device.  This information can sometimes be recovered with forensics tools.

29.  Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes

how computers or smartphones were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the subject premises because:

    a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

    b.  As explained herein, information stored within a computer, smartphones, and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, information stored within a computer, smartphones, or storage media (*e.g.*, registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware

20

detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer, smartphones, and storage media activity can indicate how and when the computer, smartphones, or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet. Such information allows investigators to understand the chronological context of computer, smartphones, or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer, a smartphone, or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer or smartphones may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (*e.g.*, a digital camera or cellular phone with an incorporated camera). The geographic and timeline information

21

described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how computers or smartphones work can, after examining this forensic evidence in its proper context, draw conclusions about how computers or smartphones were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a computer or smartphone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish

22

that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

f. I know that when an individual uses an electronic device to produce child pornography, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of these devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose may parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

### CONCLUSION

23

32.  Based on the information set forth in this affidavit, I submit there is probable cause for a warrant to search the Device described in Attachment A and seize the items described in Attachment B.

33.  Assistant United States Attorney Lindy Carpenter reviewed and approved this search warrant application.

Respectfully Submitted,

David S. Gabriel
Special Agent, FBI


Subscribed and sworn to before me on the 4  day of May, 2023.


HONORABLE JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE

24